ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

The John Hancock Life Insurance Company (U.S.A.),

        Plaintiff,

    v.

BARRY MAYERSON, individually and in his capacity as Trustee of The M. Diamond Irrevocable Life Insurance Trust, and AVIGDOR GUTWEIN,

        Defendants.

Civil Action No.:

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ JUL 27 2009 ★
BROOKLYN OFFICE

**09 - 3222**
**GO, M.J.  TRAGER, J.**

### COMPLAINT

Plaintiff The John Hancock Life Insurance Company (U.S.A.) ("John Hancock" or "Plaintiff"), for its Complaint against Barry Mayerson, individually and in his capacity as Trustee of The M. Diamond Irrevocable Life Insurance Trust (the "Trust"), states as follows:

### NATURE OF ACTION

1.    This is an action for declaratory judgment, fraud and civil conspiracy to determine John Hancock's rights and obligations regarding a life insurance policy with a death benefit of $8 million that John Hancock issued to the Trust insuring the life of Melvin Diamond (the "Policy").

2.    Beginning in 2007, the Defendants conspired in a scheme to defraud John Hancock into issuing the Policy, which Defendants knew was not being procured to meet legitimate insurance or estate planning needs but was instead being procured as a speculative investment for the benefit of a third-party investor lacking insurable interest in the life of the insured, Melvin Diamond. Such an investment is an illegal wager contract that is prohibited as a matter of law and under the terms of the Policy.

1

3.     Defendants accomplished their scheme through the use of an arrangement designed to disguise the lack of insurable interest by interposing numerous sham trusts which purported to have insurable interest in the life of the insured and by misrepresenting to John Hancock material information about the purpose of the Policy, the trusts and the income and net worth of the insured.

4.     John Hancock seeks a declaratory judgment that the Policy is either void or voidable because it was procured through material misrepresentations and as a speculative investment for the ultimate benefit of a disinterested third party who lacks insurable interest in the life of the purported insured.  John Hancock also seeks damages it has suffered as a result of the Defendants' fraud.

## PARTIES

5.     John Hancock is a Michigan corporation with its principal place of business in Massachusetts.  It is a financial services company whose business activities include providing life insurance to consumers.

6.     The M. Diamond Irrevocable Life Insurance Trust, a trust purportedly established on June 12, 2007, and governed in accordance with the laws of the State of New York, is the purported owner of life insurance policy number 93 680 148 delivered by John Hancock on or about November 19, 2007, and purporting to insure the life of Melvin Diamond for $8 million.

7.     Upon information and belief, Barry Mayerson maintains a primary residence and/or principal place of business at 1961 60th Street, Brooklyn, New York 11204, and is a citizen of the State of New York within the meaning of 28 U.S.C. § 1332.

8.     Upon information and belief, Avigdor Gutwein is an independent life insurance broker.  Gutwein maintains a primary residence and/or principal place of business at 390 Berry

2

Street, 4th Floor, Brooklyn, NY 11211 and is a citizen of the State of New York within the meaning of 28 U.S.C. § 1332.

## JURISDICTION

9.      This case seeks, *inter alia*, a declaratory judgment pursuant to 28 U.S.C. § 2201 to adjudicate the rights and legal relations of the parties hereto.

10.     This Court has jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of diverse states.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS

12.     John Hancock is, and during all relevant times has been, engaged in the business of selling life insurance to consumers.

13.     Avigdor Gutwein is an independent life insurance broker. Gutwein solicits sales of life insurance policies to consumers from life insurance companies such as John Hancock.

14.     On or about September 19, 2007, Gutwein and Defendant prepared an application seeking the issuance of a policy of life insurance on the life of Melvin Diamond (the "Life Insurance Application"). The Life Insurance Application sought $5 million of coverage and designated the Trust as the intended owner of the policy. A true and correct copy of the Life Insurance Application is attached hereto, and incorporated herein by reference, as Exhibit 1.

15.     The Life Insurance Application bears the signature of Gutwein as the agent procuring the policy, the signature of the Defendant as the proposed owner of the policy, and the purported signature of Melvin Diamond as the proposed insured.

3

16.     As part of the Life Insurance Application, Gutwein and Defendant represented to John Hancock that Melvin Diamond's annual income was $775,000.00 and his household net worth was more than $17,000,000.00 and that the purpose of the life insurance policy was estate planning.

17.     Additionally, Gutwein and Defendant represented in the Life Insurance Application that no one other than the owner of the policy (*i.e.*, the Trust) would have "any right, title or other legal or beneficial interest in any policy issued on the life of" Melvin Diamond by John Hancock and that the cost of the policy (*i.e.*, the premiums) would be financed by Melvin Diamond's savings and investment income.

18.     These representations were made for the purpose of inducing John Hancock to issue a life insurance policy with a face value of $8,000,000 on the life of Melvin Diamond.

19.     Specifically, the Life Insurance Application includes the following answers to questions relating to the ownership and funding of the policy:

"5.  Is there, or will there be, an understanding or agreement providing for a party, other than the Owner designated in question 3. a), to obtain any right, title or other legal or beneficial interest in any policy issued on the life of the Proposed Life Insured(s) as a result of this application?"  In answer, the "**No**" box is checked.

"6. a) What is the source of funding of the policy(ies) currently applied for? **[left blank]**"

"6. b)  Will the Owner, now or in the future, be paying premiums funded by an individual and/or an entity other than the Proposed Life Insured(s), or the Proposed Life Insured's employer?"  In answer, the "**No**" box is checked.

"7.  Will the premiums be financed through a loan?"  In answer, the "**No**" box is checked.  "If No, describe the funding arrangement.  **Savings and investment income**".

20.     The Life Insurance Application also includes the following answers to questions relating to the purpose of the policy and Melvin Diamond's financial position:

"13. a) What is the purpose of this insurance? (e.g. estate conservation, buy-sell, keyperson)  **Estate Planning**"

"13. d) Gross annual unearned income (dividends, interest, net real estate income, etc.)  **Approx. $775k**"

"13. e) Household net worth (combined)  **Family valued at $17+ Million**"

21.     An Application Supplement dated November 19, 2007, purportedly signed by Melvin Diamond as proposed life insured and Defendant as Trustee, states:

"The face amount excluding riders is $8,000,000.00"

"The answer to question 6A of the application should read: Savings and Investment Income"

"The Answer to Question 4C of the health questionnaire should read: consulted Dr. Epstein on September 2006"

22.     The Life Insurance Applications provide that the owner (*i.e.*, the Trust) and the proposed insured (*i.e.*, Melvin Diamond) acknowledge and agree that the statements and answers given in the application are "complete and true to the best of my/our knowledge."

5

23.     On September 9, 2007, Gutwein completed and signed an agent report in connection with the application for the Policy.  A true and correct copy of the agent report is attached hereto, and incorporated herein by reference, as Exhibit 2.

24.     Gutwein provided the following answers to questions in the agent report:

"4. a) Is there, or will there be an understanding or agreement providing for a party, other than the Owner designated in the Application, to obtain any right, title or other legal or beneficial interest in any policy issued on the life of the of the Proposed Life Insured(s) as a result of this application?"  In answer, the "**No**" box is checked.

"4. c) Will the premiums, now or in the future, be funded by a loan or other means from someone other than the Insured or the Insured's employer?"  In answer, the "**No**" box is checked.

25.     In the agent report, Gutwein represented, acknowledged and agreed to the following statement: "I declare that I have asked the Proposed Life Insured(s) and/or the Owner each question on the application.  The answers have been recorded by me exactly as stated and I know of nothing affecting the insurability of the Proposed Life Insured(s) which is not fully recorded in this application."

26.     In connection with the Life Insurance Application, Diamond, Gutwein, and Mayerson executed a trust certification form dated September 19, 2007.  A true and correct copy of the trust certification is attached hereto, and incorporated herein by reference, as Exhibit 3.

27.     The trust certification required the Grantor (Melvin Diamond), the Trustee (Barry Mayerson) and the Agent (Gutwein) to certify, among other things, that:

Beneficial interests under the Trust can and will only be established for persons who (i) are related to the Proposed Life Insured by blood or law, (ii) have a

substantial interest in the Proposed Life Insured engendered by love and affection, or (iii) hold a lawful and substantial economic interest in the continued life of the Proposed Life Insured.

28.     In reliance on the statements and representations made in the Life Insurance Application, the agent report, and the trust certification, John Hancock issued the Policy on November 12, 2007, and delivered the Policy on November 19, 2007.  The Policy provides a face amount death benefit of $8 million and designates the Trust as the policy owner and beneficiary.

29.     In connection with the issuance of the Policy, John Hancock has incurred certain costs and expenses, including, commissions and bonuses to paid Gutwein and others on the Policy.

30.     Following the issuance of the Policy, John Hancock discovered that the representations and statements made by Mayerson, Diamond, and Gutwein in the Life Insurance Application and other documents were materially false and misleading.

31.     Specifically, by way of illustration only, after John Hancock issued the Policy it discovered that:

- Mayerson, Diamond and Gutwein falsely certified that the beneficial interests in the Trust would only be established for persons with insurable interest in the life of the insured.

- The Life Insurance Application and other documents materially misstated the purpose of the Policy.

- The Life Insurance Application and other documents materially misstated the source of the premium payments and the annual income and net worth of the insured, Melvin Diamond.

7

- Eli Knoll, the CPA who purportedly served as part of the application process as a third-party verifier of Melvin Diamond's financial information, has never met Melvin Diamond and did not provide the verifying information regarding Melvin Diamond's finances.

### FIRST CLAIM FOR RELIEF
### Declaratory Judgment Regarding Material Misrepresentations

32.     John Hancock realleges the allegations contained in paragraphs 1 to 32, *supra* as though fully set forth herein.

33.     There exists an actual controversy between John Hancock and Defendant that lies within the jurisdiction of this Court pursuant to 28 U.S.C. § 2201.

34.     Gutwein, Mayerson, Diamond and others made false, misleading and material misrepresentations in the Application and Agent Report submitted to John Hancock in applying for the Policy.  These misrepresentations were made with the understanding and intention that John Hancock would rely on them.  The misrepresentations included, specifically, that Melvin Diamond had a net worth of more than $17 million and an annual income of $775,000 and that the purpose of the insurance was for estate planning.

35.     In issuing the Policy, John Hancock relied on the foregoing representations made in the Application, agent report, trust certification and other documents completed and submitted to John Hancock by or on behalf of Mayerson, Gutwein, the Trust and/or Melvin Diamond.  John Hancock would not have issued coverage had accurate representations been made in place of these inaccurate representations.

36.     John Hancock is entitled to rescind the Policy because the misrepresentations in the Application were material to the acceptance of the risk on the Policy, and because John Hancock would not have issued the Policy had it been aware of the true facts.

37.     Accordingly, John Hancock is entitled to a declaration that it may rescind the Policy based on the foregoing material misrepresentations and that such rescission will be effective upon entry of this Court's judgment; and that John Hancock will have no obligation to pay benefits under the Policy because, upon entry of this Court's judgment, it will be rescinded.

## SECOND CLAIM FOR RELIEF
### Declaratory Judgment Regarding Insurable Interest

38.     John Hancock realleges the allegations contained in paragraphs 1 to 32, *supra* as though fully set forth herein.

39.     Life insurance policies lacking insurable interest are unenforceable aleatory contracts.

40.     The Policy was procured as a speculative investment for the ultimate benefit of a disinterested third party which lacks insurable interest in the life of the insured.  This was accomplished through the use of an arrangement designed to disguise the lack of insurable interest by interposing a sham trust which purports to have insurable interest in the life of the insured.  The use of the trust form is in furtherance of a scheme to evade the public policy against "gaming" through life insurance purchases.

41.     Accordingly, John Hancock is entitled to a declaratory judgment that the Policy lacked an insurable interest at the time it was issued and thus is void; or alternatively and additionally that the Policy is voidable and Plaintiff is entitled to rescind the Policy, with such rescission effective upon entry of this Court's judgment; and in all events that John Hancock thus has or will have no obligation to pay benefits under the Policy.

### THIRD CLAIM FOR RELIEF
#### Fraud
#### (Against Defendants Mayerson and Gutwein)

42.     John Hancock realleges the allegations contained in paragraphs 1 to 32, *supra* as though fully set forth herein.

43.     The Life Insurance Applications, trust certifications, agent reports and other documents contained numerous false representations, each of which was material to John Hancock's decision to issue the Policy.

44.     These material misrepresentations were part of a scheme to defraud John Hancock that, on information and belief, was conceived and orchestrated by Defendants and others. Specifically, Defendants and others knowingly and intentionally defrauded John Hancock into issuing a life insurance Policy with a death benefit of $8 million by misrepresenting the purpose of the Policy, the source of the premium payments and the annual income and net worth of the insured.

45.     On information and belief, at all relevant times, including when the Life Insurance Application was executed and submitted to John Hancock, the initial premium payment was submitted, and the Policy was delivered, Defendants were aware of the falsity of those representations.

46.     As a result of the fraudulent scheme, John Hancock issued the Policy, and has suffered injury, in an amount to be proven at trial, arising from, without limitation:

      a.   The commissions and bonuses paid on the Policy;

      b.   The costs of administering the Policy;

      c.   The costs of investigating the issuance of the Policy; and

      d.   The risk of being required to pay a benefit on the fraudulently procured Policy.

47.     Accordingly, John Hancock is entitled to judgment that Defendants defrauded it in obtaining issuance of the Policy, and are liable for John Hancock's injuries.

48.     John Hancock is further entitled to recover actual and punitive damages in light of the conduct of Defendants, committed with malice and deliberate fraud.

### FOURTH CLAIM FOR RELIEF
### Civil Conspiracy
### (Against Defendants Mayerson and Gutwein)

49.     John Hancock realleges the allegations contained in paragraphs 1 to 32, *supra* as though fully set forth herein.

50.     At all times material to this action, Defendants participated in a conspiracy among themselves, and with other persons known and unknown, the purposes of which were, *inter alia:* (i) to fraudulently misrepresent the purpose of the Policy, the source of the premium payments and the annual income and net worth of the insured; (ii) to conceal that the Policy was being obtained by a sham trust as a speculative investment for the ultimate benefit of a third-party investor lacking insurable interest in the life of the insured; and (iii) to defraud John Hancock into issuing a life insurance Policy with a death benefit of $8 million.

51.     During the course of the conspiracy, the conspirators, acting in concert, engaged in numerous concerted acts to further the purposes of the conspiracy, including but not limited to those described above. Each act of the conspiracy was ratified by the other co-conspirators, who acted as each other's agents in carrying out the conspiracy. The Defendants engaged in the conspiracy to benefit themselves and profit from the scheme at the expense of John Hancock.

52.     As a direct and proximate result of the conduct of Defendants, John Hancock issued the Policy, and has suffered injury, in an amount to be proven at trial, arising from, without limitation:

        a.    The commissions and bonuses paid on the Policy;

11

b. The costs of administering the Policy;

c. The costs of investigating the issuance of the Policy; and

d. The risk of being required to pay a benefit on the fraudulently procured Policy.

53.     Each defendant is jointly and severally liable for the torts of the other members of the conspiracy that were committed in furtherance of the goals of the conspiracy.

54.     Accordingly, John Hancock is entitled to judgment that Defendants are each jointly and severally liable for John Hancock's injuries arising as a result of the torts committed in furtherance of the goals of the conspiracy.

WHEREFORE John Hancock seeks judgment:

a. Declaring that John Hancock is entitled to rescind the Policy and that such rescissions will be effective upon entry of this Court's judgment, at which point John Hancock will have no obligation to pay benefits or otherwise render any performance under the Policy.

b. Declaring that the Trust and its successors in interest do not have any valid right or interest or claim to any benefit under or from the Policy.

c. In the alternative, declaring that the Trusts and its successors in interest will not have any valid right or interest or claim to any benefit under or from the Policy upon rescission of the Policy by entry of this Court's judgment.

d. In the alternative, declaring that the Policy is void for lack of insurable interest and that John Hancock has no obligation to pay benefits or otherwise render any performance under either of the Policy.

e.  Declaring that John Hancock has no obligation to return the premiums because the Defendants engaged in a scheme to defraud John Hancock and thus have unclean hands, and the Defendants are not entitled to a return of premiums.

f.  Alternatively declaring that, even if the Court determines that John Hancock is required to tender return of premiums in connection with the rescission counts, it is also entitled to offset the amount of its costs and expenses, notably the commissions John Hancock paid on the Policy, which exceed the amount of premiums received.

g.  Awarding all damages incurred as a result of the fraud perpetrated on John Hancock, including, but not limited to, commissions and compensations paid in connection with the Policy, as well as other compensatory and consequential damages.

h.  Awarding all damages incurred as a result of the conspiracy of Defendants, including, but not limited to, commissions and compensations paid in connection with the Policy, as well as other compensatory and consequential damages.

i.  Awarding punitive damages.

j.  Awarding attorney fees and costs associated with bringing this action.

k.  Awarding such other relief as the Court deems just, equitable, and proper.

Dated: July 27, 2009
      Armonk, NY

                        Respectfully submitted,

                        BOIES, SCHILLER & FLEXNER LLP

                        Alan B. Vickery
                        575 Lexington Avenue, 7th Floor
                        New York, New York 10022
                        Phone: (212) 446-2300
                        Fax:  (212) 446-2350

                        Motty Shulman
                        333 Main Street
                        Armonk, NY 10504
                        Phone: (914)749-8200
                        Fax: (914)749-8300

                        *Attorney for Plaintiff The John Hancock Life*
                        *Insurance Company (U.S.A.)*

14

*John Hancock*

Service Office:
200 BLOOR STREET EAST
TORONTO, ONTARIO
CANADA M4W 1E5

## Application for Life Insurance

☐ John Hancock Life Insurance Company (U.S.A.)
☐ John Hancock Variable Life Insurance Company
☐ John Hancock Insurance Company
*(hereinafter referred to as The Company)*
• Print and use black ink. Any changes must be initialed by the Proposed Life Insured(s) and/or Owner(s).

Policy No. (for Internal Use Only)

### Proposed Life Insured (Life One)

**1. a) Name** — First *Melvin* Middle *Diamond* Last

b) Date of Birth — mm *01* dd *31* yyyy *1928*   c) Sex ☑ M ☐ F

d) Place of Birth — State *USA* Country

e) Citizenship ☑ U.S. ☐ Other

f) Social Security/Tax ID Number — **REDACTED**

g) Driver's License No.

h) Home Address — Street No. & Name, Apt. No. *858 Fiske st*
City *Woodmere* State *NY* Zip code *11598*

i) Years at this Address *20⁵*

j) Tel Nos. — Home *(516) 568-5515* Business ( )

k) Name of Employer *Retired*

Address of Employer — Street No. & Name, Apt. No.
City State Zip code

l) Occupation

### Proposed Life Insured (Life Two)

**2. a) Name** — First Middle Last

b) Date of Birth — mm dd yyyy   c) Sex ☐ M ☐ F

d) Place of Birth — State Country

e) Citizenship ☐ U.S. ☐ Other

f) Social Security/Tax ID Number

g) Driver's License No. — State

h) Home Address — Street No. & Name, Apt. No.
City State Zip code

i) Years at this Address

j) Tel Nos. — Home ( ) Business ( )

k) Name of Employer

Address of Employer — Street No. & Name, Apt No.
City State Zip code

l) Occupation

### Owner - Complete information only if Owner is other than Proposed Life Insured.

If Trust Owner, complete questions 3. a), d) and e) and Trust Certification PS5101.   Date of Trust — mm dd yyyy

**3. a) Name** *The M. Diamond Trust*

b) Date of Birth — mm *06* dd *12* yyyy *07* (If individually owned)   c) Relationship to Proposed Life Insured(s) *Trust*   d) Social Security/Tax ID Number **REDACTED**

e) Address — Street No. & Name, Apt No. *74 Whisper ct.* City *Lakewood* State *NJ* Zip code *08701*

**4. Multiple Owners** - Provide details as above for other owner(s) on a separate page.   Type of ownership ☐ Joint with right of survivorship   ☐ Tenants in Common

NB5000KHJ (05/2006)                    Page 1 of 5                    (US)

**Other Information - MUST BE COMPLETED**

5. Is there, or will there be, an understanding or agreement providing for a party, other than the Owner designated in question 3. a), to obtain any right, title or other legal or beneficial interest in any policy issued on the life of the Proposed Life Insured(s) as a result of this application?

☒ No  ☐ Yes - give details

6. a) What is the source of the funding for the policy(ies) currently applied for?

b) Will the Owner, now or in the future, be paying premiums funded by an individual and/or an entity other than the Proposed Life Insured(s), or the Proposed Life Insured's employer?  ☐ Yes - If Yes, answer question 7.   ☒ No - If No, proceed to question 8.

7. Will the premiums be financed through a loan?
☒ No - If No, describe the funding arrangement. *savings and investment income*
☐ Yes - If Yes, answer the following questions.

    a) What is the interest rate per annum?  _____ %

    b) In addition to repayment of principal and interest, are there other fees, charges or other consideration to be paid on maturity?

    ☐ No  ☐ Yes - give details

    c) What is the duration of the loan?          d) Who is the lender?

    e) What amount and type of collateral is required to secure the loan?  Amount $ _____  Type of Collateral _____

**Beneficiary Information - Subject to change by Owner**

8. a) Name of Primary Beneficiary  First *The M Diamed Trust dtd 6/12/07* Last

b) Relationship to Proposed Life Insured(s)

c) Name of Secondary Beneficiary  First _____ Middle _____ Last

d) Relationship to Proposed Life Insured(s)

**Coverage Applied For**

9. *Complete the applicable Policy Details Form NB5007 (Universal Life), NB5008 (Variable Life) or NB5013 (Term & Traditional Life) for details of the policy being applied for, including Supplementary Benefits and other benefit options.*

**Juvenile Insurance - Do not complete for Children's Insurance Rider.**

10. a) Are all siblings equally insured?  ☐ Yes  ☐ No

b) Amount of life insurance currently in force or pending on parent(s)/guardian(s)  $ _____

If none, give details.

**Existing and Pending Insurance - Proposed Life Insured(s)**

| | | Life One | Life Two |
|---|---|---|---|
| 11. a) Total insurance in force on the Proposed Life Insured(s), including any policy that has been sold, assigned or settled to or with a settlement or viatical company or any other person or entity. | | $ *0* | $ |
| b) Including this application, total insurance currently pending with all companies. | | $ *5,000,000* | $ |
| c) Of the above pending amount in 11. b), how much do you intend to accept? | | $ *5,000,000* | $ |

d) Have you ever had an application for life or health insurance declined, postponed, rated or offered with a reduced face amount?
  Life One: ☒ No  ☐ Yes - give details
  Life Two: ☐ No  ☐ Yes - give details

e) Provide information for each policy in force on the Proposed Life Insured(s), including any policy that has been sold, assigned or settled to or with a settlement or viatical company or any other person or entity. (Attach additional page if necessary.)

| Proposed Life Insured | Company | Insurance Group | Personal / Business | Issue Date mm | dd | yy | To Remain in Force? Yes | No | Face Amount |
|---|---|---|---|---|---|---|---|---|---|
| ☐ One ☐ Two | | ☐ | ☐ | | | | ☐ | ☐ | $ |
| ☐ One ☐ Two | *N/A* | ☐ | ☐ | | | | ☐ | ☐ | $ |
| ☐ One ☐ Two | | ☐ | ☐ | | | | ☐ | ☐ | $ |
| ☐ One ☐ Two | | ☐ | ☐ | | | | ☐ | ☐ | $ |

NB5000NJ (09/2008)

(US)

**Existing and Pending Insurance - Proposed Life Insured(s) (continued)**

|  | Life One | Life Two |
|---|---|---|
| 11. f) Is Disability Insurance (DI) with Provident or Long Term Care (LTC) insurance with the Company currently being applied for? | ☐ Yes ☑ No | ☐ Yes ☐ No |
| If Yes, provide ☐ DI date of application | mmm    dd    yyyy | mmm    dd    yyyy |
| ☐ LTC date of application | mmm    dd    yyyy | mmm    dd    yyyy |

**Existing Insurance - Owner(s) Replacement(s) - MUST BE COMPLETED**

12. Are there any existing life insurance and/or annuity policies owned by the Owner (including existing policies in the process of being lapsed or surrendered)? ☐ Yes ☑ No  If Yes, please complete the IMPORTANT NOTICE: Replacement of Life Insurance or Annuities (Model Regulation), NB5011.

**Financial Questions**

*Complete when applying for Face Amount of $250,000 or more, or any amount of Business Insurance, or when a Proposed Life Insured is over age 70.  (Please submit copies of financial statements, estate analysis, contractual agreements, etc.)*

13. a) What is the purpose of this insurance? (e.g. estate conservation, buy-sell, keyperson)   *Estate Planing*

b) How was the need for the Face Amount determined?   *requested by insured*

|  | Life One | Life Two |
|---|---|---|
| c) Gross annual earned income (salary, commissions, bonuses, etc.) | $ 0 | $ |
| d) Gross annual unearned income (dividends, interest, net real estate income, etc.) | *Aprox* $ 775 K | $ |
| e) Household net worth (combined) | *Family valued est* $ 17, - Million | |

f) In the last 5 years, has/have either of the Proposed Life Insured(s), or the business had any major financial problems (bankruptcy, etc.)? ☑ No  ☐ Yes - give details

**Business Insurance - Complete for ALL Business Insurance**

| 14. | Current Year | Previous Year |
|---|---|---|
| a) Assets | $ | $ |
| b) Liabilities | $ | $ |
| c) Gross Sales | $ | $ |
| d) Net income after taxes | $ | $ |
| e) Fair Market Value of the business | $ | $ |

f) What percentage of the business is owned by the Proposed Life Insured(s)? _____ %

g) Are other partners/owners/executives being insured? ☐ Yes ☐ No  If Yes, give details.

**Smoking Questions**

15. Have you ever used tobacco or nicotine products in any form (including cigarettes, cigars, cigarillos, a pipe, chewing tobacco, nicotine patches or gum)?

Proposed Life Insured (Life One) _____ details below   Proposed Life Insured (Life Two) ☐ No  ☐ Yes - give details below

| Product | Frequency pack(s)/day | Current | Past | Date last used |
|---|---|---|---|---|
| Cigarettes | | ☐ | ☐ | |
| Cigars | x / day | ☐ | ☐ | |
| Other: | x / day | ☐ | ☐ | |

**REDACTED**

**Lifest**

**REDACTED**

Proposed Life Insured (Life Two) ☐ No  ☐ Yes - give details below

) What type of exercise? _____

How many times a week? _____   c) How long? (Hours or minutes per occasion) _____

|  | Life One | Life Two |
|---|---|---|

17. Do you expect to travel outside the U.S. or Canada, or change your country of residence in the next 2 years?

18. a) Have you flown as a student pilot, licensed pilot, or crew member in any aircraft, including ultralight planes, in the last 2 years? If Yes, please complete Aviation Questionnaire NB5009.

b) Have you engaged in any form of motor vehicle or power boat racing, sky diving/parachuting, skin or scuba diving, hang-gliding, mountain climbing, or any other hazardous activities in the last 2 years? If Yes, please complete Avocation Questionnaire NB5010.

**REDACTED**

NB5000(U) (09/2005)

Page 3 of 5

**Lifestyle Questions (continued) - Please provide details in No. 21 for Yes answers.**

| | Life One | Life Two |
|---|---|---|
| 19. a) Have you committed 2 or more moving violations within the last 2 years? | ☐ Yes ☑ No | ☐ Yes ☐ No |
| b) Have you been convicted of driving while intoxicated or while otherwise impaired? | ☐ Yes ☑ No | ☐ Yes ☐ No |
| 20. In the last 10 years, have you been convicted of a criminal offense? | ☐ Yes ☑ No | ☐ Yes ☐ No |

**21. Proposed Life Insured (Life One)**          **Proposed Life Insured (Life Two)**

| Question No. | Details for any "Yes" answers to Lifestyle Questions | Question No. | Details for any "Yes" answers to Lifestyle Questions |
|---|---|---|---|
| | | | |

**Doctor/Physician - MUST BE COMPLETED**

**Proposed Life Insured (Life One)**                **Proposed Life Insured (Life Two)**

22.

a) Date of last visit

REDACTED

a) Date of last visit     mm    dd    1977

b) Reason for the visit

c) Diagnosis or outcome of the visit

d) Treatment/medication prescribed

e) Name of doctor/physician consulted
First     Middle     Last

f) Address     Street No. & Name, Suite No.
City     State     Zip code

g) Pr...medical records if other than above.
Name   First   Middle   Last

Address   Street No. & Name, Suite No.
City   State   Zip code

g) Provide name and address of doctor/physician with your complete medical records if other than above.
Name   First   Middle   Last

Address   Street No. & Name, Suite No.
City   State   Zip code

**Medical Certification - Complete this section when submitting Medical Examination of another insurer.**

23. The attached examination is on the life of:

| Name of Proposed Life Insured | Name of Insurance Company | Date of Examination mm dd 1977 |
|---|---|---|
| 1. | | |
| 2. | | |

| | Life One | Life Two |
|---|---|---|
| a) To the best of your knowledge and belief, are the statements in the examination true as of the date this application is signed? | ☐ Yes ☐ No | ☐ Yes ☐ No |
| b) Has the person who was examined, consulted a doctor/physician or received medical or surgical advice since the date of the examination?  If Yes, give details: | ☐ Yes ☐ No | ☐ Yes ☐ No |

**Special Requests**

24.

Declarations and Authorizations

## DECLARATIONS

The Proposed Life Insured(s) and Owner(s) (Parent or Guardian) declare that the statements and answers in this application and any form that is made part of this application are complete and true to the best of my/our knowledge and belief.

In addition, I/we understand and agree that:

1. The statements and answers in this application, which include the Policy Details and any supplemental form relating to the health, aviation or lifestyle of the Proposed Life Insured(s), will become part of the insurance policy issued as a result of this application.

2. (a) Any life insurance policy issued as a result of this application will be effective on the later of the date the first premium has been paid in full and the date the policy has been delivered. The insurance will not be in effect if there has been a deterioration in the insurability of any proposed life insured(s) since the date of the application.

   If the Temporary Insurance Agreement (TIA) coverage is in effect and a subsequent policy is issued within 90 days of the date of the original application, the above paragraph only applies to any amount in excess of the TIA amount.

2. (b) If premiums are paid prior to delivery of the policy and the terms and conditions of the Temporary Insurance Agreement are satisfied, insurance prior to the effective date shall be provided only under the Agreement and according to its terms.

3. ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

## AUTHORIZATION TO OBTAIN INFORMATION

I/We, the Proposed Life Insured(s), authorize:

1. John Hancock Life Insurance Company (U.S.A.), John Hancock Variable Life Insurance Company or John Hancock Life Insurance Company (The Company) to obtain an investigative consumer report on me/us.

2. Any medical professional, medical care provider, hospital, clinic, laboratory, insurance company, the Medical Information Bureau (MIB Inc.), or any other similar person or organization to give The Company and its reinsurers information about me/us or any minor child/children who is/are to be insured.

The information collected by The Company may relate to the symptoms, examination, diagnosis, treatment or prognosis of any physical or mental condition.

In turn, The Company is free to disclose such information and any information developed during its evaluation of my/our application to:
(a) its reinsurers; (b) the MIB Inc.; (c) other insurance companies as designated by me/us; (d) me/us; (e) any medical professional designated by me/us; or (f) any person or entity entitled to receive such information by law or as I/we may further consent.

I/We acknowledge receipt of the Notice of Disclosure of Information relating to the underwriting process, investigative consumer reports and the MIB Inc.

This authorization will be valid for two years from the date shown.   A photocopy of this authorization will be as valid as the original.

Information collected under this authorization will be used by The Company to evaluate my/our application for insurance, to evaluate a claim for benefits, or for reinsurance or other insurance purposes.

I am/We are entitled, or my/our authorized representative is entitled, to a copy of this authorization.

## OWNER/TAXPAYER CERTIFICATION - MUST BE COMPLETED

Under the penalties of perjury, I the Owner, certify that:

1. The number shown on Page 1 of the application is my correct taxpayer identification number (if number has not been issued, write "Applied for" in the box on Page 1), AND

2. Check the applicable box:
   ☐ (I) am not subject to Backup Tax Withholding because (a) I am exempt from Backup Tax Withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to Backup Tax Withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to Backup Tax Withholding, AND
   ☐ The Internal Revenue Service (IRS) has notified me that I am subject to Backup Tax Withholding, AND

3. I am a U.S. resident (including a U.S. resident alien).

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid Backup Tax Withholding.

**Signatures - Please read all of the above Declarations and Authorizations before signing this form.**

| | | | | |
|---|---|---|---|---|
| Signed at _Lakewood_ City | State _NJ_ | This _19_ | Day of _September_ | Year _2007_ |

Signature of Agent/Registered Representative (as Witness)

X _Melvin Edusman_
Signature of Proposed Life Insured One (Parent or Guardian, if under age 15)

Consent for Juvenile Insurance of Parent or Guardian, if other than Owner

X
Signature of Proposed Life Insured Two (Parent or Guardian, if under age 15)

☐ Father  ☐ Mother  ☐ Guardian

X

| | | | | |
|---|---|---|---|---|
| Signed at _Lakewood_ City | State _NJ_ | This _19_ | Day of _September_ | Year _2007_ |

Signature of Agent/Registered Representative (as Witness)

X _B tappa_
Signature of Owner, if other than a Proposed Life Insured (Signing Officer please provide title or corporate seal)

X
Signature of Owner, if other than a Proposed Life Insured (Signing Officer please provide title or corporate seal)

NB5000AU (09/2006)

Page 5 of 5

*John Hancock.*

Service Office:
200 BLOOR STREET EAST
TORONTO, ONTARIO
CANADA M4W 1E5

Policy No. (for Internal Use Only)

**Agent Report**
- ☐ John Hancock Life Insurance Company (U.S.A.)
- ☐ John Hancock Variable Life Insurance Company
- ☐ John Hancock Life Insurance Company
(hereinafter referred to as The Company)
- • Complete and submit with Application for Life Insurance.
- • Print and use black ink.

**Owner**

1. Name of Owner  *The M Diamond Trust*

2. Proposed Life Insured (Life One)   Proposed Life Insured (Life Two)

Name   First   Middle   Last   Name   First   Middle   Last

*Melvin Diamond*

**Agent Questions - To be completed by the Agent/Registered Representative**

3. a) Total Premium Collected  $   b) Has a Temporary Life Insurance Agreement been issued? ☐ Yes ☑ No

4. a) Is there, or will there be an understanding or agreement providing for a party, other than the Owner designated in the Application, to obtain any right, title or other legal or beneficial interest in any policy issued on the life of the Proposed Life Insured(s) as a result of this application?
   ☑ No   ☐ Yes - give details

   b) Will any policy issued on the life of the Proposed Life Insured(s) as a result of this application, replace a policy that has been sold, assigned or settled to or with a settlement or viatical company or any other person or entity? ☐ Yes ☑ No

   c) Will the premiums, now or in the future, be funded by a loan or other means from someone other than the insured or the insured's employer?
   ☑ No   ☐ Yes - give details of the funding arrangement. If applicable, describe the name of the lender, interest rate, term of loan, other fees, charges or other consideration to be paid on maturity of loan and required amount and type of collateral.

5. Will any entity other than a life insurance company be medically evaluating the Proposed Life Insured to determine life expectancy or to otherwise obtain financing?   ☑ No   ☐ Yes - give details

6. a) Are there any existing life insurance and/or annuity policies owned by the Owner (including existing policies in the process of being lapsed or surrendered)? ☐ Yes ☑ No   If Yes, the Agent/Registered Representative is required to present and read IMPORTANT NOTICE: Replacement of Life Insurance or Annuities (Model Regulation), NB5011 to the Owner. The completed form must be submitted with Application.

   b) If Accident and Sickness or Long Term Care is being replaced, please give the Proposed Life Insured the "Notice for Replacement of Individual Accident and Sickness or Long-term Care Insurance", form NB5019.

   c) List any other health insurance policies you have sold to the applicant.   | Health policies in force | Health policies sold in the past 5 years and no longer in force |

7. Did you see each Proposed Life Insured when the application was completed?   ☑ Yes   ☐ No - give details

8. Agent Information (Always complete.)

| Name of Agent/Entity | Agent Code | Social Security No. | Telephone No. | E-mail Address | % Share |
|---|---|---|---|---|---|
| *Avigdor Gutwein* | REDACTED | | | *Sandra @ the Bollingergroup.com* | *100%* |

Name of Broker Dealer (if applicable)   *BGA = Bollinger Group   # 205991*   100%

**Certification and Signatures - All Agents/Registered Representatives sharing commissions for this policy must sign this form.**

I declare that I have asked the Proposed Life Insured(s) and/or the Owner each question on the application. The answers have been recorded by me exactly as stated and I know of nothing affecting the insurability of the Proposed Life Insured(s) which is not fully recorded in this application.

I certify that the Buyer's Guide form NB5071US has been given to the Owner at time of application and that no sales material other than that approved by The Company has been used.

Signature of Agent/Registered Representative

X _____   Signed at  City *Lakewood*  State *NJ*  This Day of *September 9*  Year *2007*

AZ MT NJ NH OR VT - (NF)

NB5085US (02/2007)

*John Hancock.*

**Trust Certification**

☐ John Hancock Life Insurance Company (U.S.A.)
☐ John Hancock Variable Life Insurance Company
☐ John Hancock Life Insurance Company
*(hereinafter referred to as The Company)*
• Must be signed by Grantor(s) and Trustee(s)

Service Office:
200 BLOOR STREET EAST
TORONTO, ONTARIO
CANADA M4W 1E5

Policy No. (for Internal Use Only)

| Proposed Life Insured (Life One) | Proposed Life Insured (Life Two) |
|---|---|
| Name    First    Middle    Last | Name    First    Middle    Last |

**Melvin Diamond**

Name(s) of Grantor(s)

Name of Trust    **The M. Diamond Trust**    (The Trust)

Date of Trust    **06 : 12 : 07**    Date Trust was signed    mm : dd : yyyy

Who are the current beneficiaries of the Trust?

Name(s) of Trustee(s)    **The M. Diamond Trust**

What is the relationship between Grantor(s) and Trustee(s)?    **Family**

Address of Trust    Street no. & Name, Apt no., City, State, Zip code    **24 Whisper St.    Lakewood NJ    08701**

Situs of Trust:
The Trust is subject to the laws of the State of    **NJ**

**Certification**

The Grantor(s) and Trustee(s) certify that:

1) the Trust is: ☐ Irrevocable and is in full force and in effect;
   ☐ Revocable and is in full force and in effect;

2) the Trustee(s) is/are allowed by the terms of the Trust to purchase Life Insurance and Securities;

3) the Trust permits the Trustee(s) to exercise all ownership rights provided by the Policy issued by The Company to the Trust, including, but not limited to, the right to surrender, pledge or encumber the Policy or make withdrawals and the Trustee(s) is/are permitted to distribute the Policy to any beneficiary of the Trust or to sell and transfer ownership of the Policy pursuant to the sale;

4) neither The Company or anyone acting as an agent of The Company is responsible to determine the authority of the Trustee(s) or inquire into, or review the provisions of the Trust, and shall not be charged with knowledge of the terms of the Trust; and

5) The Company may rely on the evidence submitted with respect to any change of the Trustee(s) and/or the appointment of a successor Trustee, and is not responsible to determine that the change or the appointment of any additional or successor Trustee(s) conforms with the Trust provisions.

6) Beneficial interests under the Trust can and will only be established for persons who (i) are related to the Proposed Life Insured by blood or by law, (ii) have a substantial interest in the Proposed Life Insured engendered by love and affection, or (iii) hold a lawful and substantial economic interest in the continued life of the Proposed Life Insured.

**Signatures**

Signed at    City    **Lakewood**    State    **NJ**    This    Day of    **19**    **September 2007**    Year

Signature of Agent/Registered Representative (as Witness)    Signature of Grantor
X                                                             X    **Melvin Diamond**

                                                             X

Signature of Trustee                                          Signature of Trustee
X                                                             X    **B. ____**

(NF)

PS5101US (09/2007)